Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 05-37223 (LMW) |
| | ) | | |
| CHRISTOPHER K. BEDARD, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | | |
| | | | |
| DANIELLE TOCE, | ) | ADV. PRO. NO. | 06-3064 (LMW) |
| | ) | | |
| PLAINTIFF | ) | DOC. I.D. NO. | 1 |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| CHRISTOPHER K. BEDARD, | ) | **CONTINUED HEARING:** | |
| | ) | **JUNE 27, 2007 AT 2:00 P.M.** | |
| DEFENDANT. | ) | | |

## APPEARANCES

Joel M. Grafstein, Esq.                             Attorney for the Plaintiff
Grafstein & Associates
P. O. Box 1035
10 Melrose Drive
Farmington, CT 06034-1035

Christopher K. Bedard                                Chapter 7 Debtor, *Pro Se*
72 Smokerise Circle
Prospect, CT 06712-1063

**MEMORANDUM OF PARTIAL DECISION
AND ORDER SCHEDULING CONTINUED HEARING RE:
COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT**

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court is the above-referenced plaintiff's (the "Plaintiff") Complaint Objecting to Dischargeability of Debt (A.P. Doc. I.D. No. 1, the "Complaint")[1] pursuant to which the Plaintiff seeks a determination that certain debts due from the above-referenced debtor (the "Debtor") were not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(15).[2] This court has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[3]

## I.    PROCEDURAL BACKGROUND

### A.    Chapter 7 Case[4]

The Debtor commenced this chapter 7 case by a petition filed on October 15, 2005. (*See* Case Doc. I.D. No. 1.) The Debtor filed a set of schedules with that petition. (*See id.*) In his Schedule A. Real Property, the Debtor listed certain real property in Prospect, Connecticut (the "Property") as owned "½ interest with ex-wife." (*See id.* (Schedule A).) The Debtor elected exemptions under Bankruptcy Code § 522(b)(1) and listed an exemption with respect to the Property under Bankruptcy Code § 522(d)(1). (*See* Case Doc. I.D. No. 1 (Schedule C).) The Debtor received

---

[1] References herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___." References herein to the docket of this chapter 7 case appear in the following form: "Case Doc. I.D. No. ____."

[2] References herein to title 11 of the United States Code and/or to the Bankruptcy Code are references to the same as they existed prior to their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[3] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[4] This case and adversary proceeding originally were assigned to the Honorable Albert S. Dabrowski, Chief United States Bankruptcy Judge for this district. Subsequently, Chief Judge Dabrowski recused himself and this case and adversary proceeding were assigned to the undersigned judge. (*See* Case Doc. I.D. No. 30; A.P. Doc. I.D. No. 13.)

- 2 -

his chapter 7 discharge on February 14, 2006. (*See* Case Doc. I.D. No. 13, the "Discharge.") The chapter 7 trustee (the "Trustee") filed a Report of No Distribution on February 16, 2006. (*See* Case Doc. I.D. No. 14.)

The Debtor amended his exemptions on April 3, 2006 to elect exemptions under Bankruptcy Code § 522(b)(2) and listed on his amended Schedule C an exemption (in the amount of $75,000.00) with respect to the Property under Section 52-352b(t) of the Connecticut General Statutes. (*See* Case Doc. I.D. No. 20.) Also on April 3, 2006, the Debtor filed a motion to compel the Trustee to abandon the estate's interest in the Property. (*See* Case Doc. I.D. No. 18, the "Abandonment Motion.") The Abandonment Motion stated that the Property was subject to foreclosure but also was subject to a purchase and sale agreement with a scheduled closing on April 6, 2006. (Abandonment Motion ¶ 4.) The Abandonment Motion was granted by order of this court dated April 5, 2006. (*See* Case Doc. I.D. No. 26, the "Abandonment Order.")[5]

### B.    Adversary Proceeding

The Plaintiff commenced this adversary proceeding on May 4, 2006 by her timely filing of the Complaint.[6] The Complaint sounds in two counts: the first count (the "First Count") asserts a claim for nondischargeability under Bankruptcy Code § 523(a)(15); the second count (the "Fraud Count") asserts a claim for nondischargeability under Bankruptcy Code § 523(a)(2)(A). (*See* A.P. Doc. I.D. No. 1.) The Debtor filed his answer on July 13, 2006. (*See* A.P. Doc. I.D. No. 9.) The

---

[5]    The automatic stay as to the Debtor personally and as to his property terminated upon entry of the Discharge. *See* 11 U.S.C. § 362(c)(2)(C). The Abandonment Order took the Property (and its proceeds) out of the bankruptcy estate and, accordingly, the stay as to them terminated at that time. *See* 11 U.S.C. § 362(c)(1).

[6]    *See* Case Doc. I.D. No. 16 (extending the last date for the Plaintiff to file a complaint to May 8, 2006).

Debtor is *pro se* in the adversary proceeding (although he is represented by counsel in the chapter 7 case).

The Complaint came on for trial (the "Trial") on October 16, 2006.[7] The Plaintiff testified for herself at the Trial and the Debtor testified for both sides. The Plaintiff introduced documentary evidence into the record.[8] At the conclusion of the Trial (including oral argument), the court took the matter under advisement. By order dated February 13, 2007, the court reopened the Trial record to admit an additional exhibit. (*See* A.P. Doc. I.D. No. 25.)[9] The matter now is ripe for this partial decision.

## II.    FACTS

### A.    The Divorce

The Debtor commenced divorce proceedings against the Plaintiff in January, 2004. (*See* Transcript at 11 (testimony of the Debtor).) They had no children. (*See* Plaintiff Exh. 2, Superior Court Memorandum of Decision, at 1.) The Connecticut Superior Court issued a judgment of divorce on or about January 13, 2005. (*See* Exh. 1, the "Judgment.") The Judgment provided in relevant part as follows:

> [The Property] . . . shall be immediately placed on the market for sale. The sale shall be accomplished by listing the [P]roperty at an initial sales price of $400,000 (or at any other mutually agreeable price) with a realtor in the Prospect area within ten days from the date of this order. The parties shall reduce the price by $5,000 every other month until the sale occurs. The [Debtor] . . . shall have exclusive use of the marital residence from the date of dissolution to the date of sale. The [Debtor] . . . shall

---

[7]  A copy of the transcript (the "Transcript") of the Trial is in the record as A.P. Doc. I.D. No. 19.

[8]  References herein to those exhibits appear in the following form: "Plaintiff's Exh. __."

[9]  That exhibit appears in the record as "Debtor's Exh. A."

>   maintain the [P]roperty in good, clean condition and at all times to be prepared for showings. He shall further provide the broker with a key to the marital residence to allow access to the home for showing to prospective buyers and shall allow for a multiple listing lockbox. He shall maintain the mortgage, real estate tax and insurance payments as they become due, and if he should default in the payment of same, said payments will be deducted from his share of the proceeds. Both parties will cooperate with the broker and make themselves available for the showing of the property. Neither party shall talk to or discuss the sale with any prospective buyer if an agent is involved. The net proceeds shall be divided after payment of the normal closing costs and adjustments and after the payment of the BankOne Visa debt in the amount of $1,500, as follows: 45% to the [Debtor] . . . and 55% to the [Plaintiff] . . . [the "45/55 Allocation"]. Further, from the [Debtor's] . . . share of the net proceeds, the following amounts shall be deducted from the [Debtor's] . . . share and shall be paid to the . . . [Plaintiff]: $3,000 for the repairs to her automobile and $5,000 toward her attorney's fees.

(Judgment at 2-3.) The Debtor appealed (the "Appeal") the Judgment to the Connecticut Appellate Court on or about January 31, 2005.[10] The Debtor moved to have the stay pending appeal continued and that motion was denied by the Superior Court by order entered on August 3, 2005. (*See* State Court Record; *see also* Transcript at 20 (testimony of the Debtor).)[11] The Debtor claims that the only reason that he commenced this bankruptcy case was because "they were going to put me in jail because I couldn't make the . . . mortgage payments [required by the Judgment] at the time . . . ," (Transcript at 41:20-22 (remarks of the Debtor)). The Debtor's father paid for the Debtor's bankruptcy attorney. (*See* Transcript at 25 (testimony of the Debtor).)

The Property was sold on or about April 7, 2006 and $106,401.26 (plus accruing interest, the "Sale Proceeds") was placed in escrow with the Debtor's appellate lawyer pending resolution of the

---

[10]   The court takes judicial notice of the official website for "State of Connecticut Judicial Branch" with respect to the record (the "State Court Record") for *Christopher Bedard v. Danielle L. Bedard,* # UWY-FA-04-0182621-S (the subject divorce proceedings). *See also* A.P. Doc. I.D. No. 9, Exhibit D (cover sheet of the Debtor's Reply Brief in A.C. 26238).

[11]   The Debtor appears to have appealed that order as well. (*See* State Court Record.)

Appeal.[12]  (*See* A.P. Doc. I.D. No. 9, Exhibit A; *see also* Transcript at 12 (testimony of the Debtor).) In the Appeal, the Debtor is attempting to obtain the Sale Proceeds in their entirety. (*See* Transcript at 20 (testimony of the Debtor).)

### B.      The Circumstances of the Parties

#### 1.      The Debtor

The Debtor is about 40 years old. (*See* Transcript at 56 (testimony of the Debtor).) He has a high school education, "[s]ome technical school background and United States Air Force," (Transcript at 19:16-17 (testimony of the Debtor)). At one time he was a federal protection officer. (Transcript at 41(remarks of the Debtor).) He is unmarried. He is disabled and unemployed. The Debtor had no employment income for 2003 and the years following. (*See* Plaintiff's Exh. 3 (Statement of Financial Affairs); Transcript at 13, 16 (testimony of the Debtor); Transcript at 10-11 (testimony of the Plaintiff).) Among other physical complaints, he cannot "lift . . . [his] arms any more [sic]," (Transcript at 15:11 (testimony of the Debtor)), "is loaded with arthritis," (*id.* at 42:23-24 (testimony of the Debtor)), his "mental capacity is gone . . . [and he hasn't] been right in six years," (*id*. at 42:21-22 (testimony of the Debtor)) and is "in a lot of pain," (Transcript at 59:16 (testimony of the Debtor)). He is homeless and is living in his 1993 Chevrolet Lumina with a large dog which formerly was the couple's. (Transcript at 24, 26, 56 (testimony of the Debtor).) He has no medical insurance, no pension and no 401(k) plan or other retirement savings. (Transcript at 56-57 (testimony of the Debtor); *see also* Plaintiff's Exh. 2 at 2-3.) The Debtor has not had medical or dental treatment in over three years. (Transcript at 56 (testimony of the Debtor).)  The only money

---

[12]   The Debtor's father paid the Debtor's appellate lawyer. (Transcript at 25 (testimony of the Debtor).) The Debtor was *pro se* in the state trial court. (*Id*. at 27-28 (testimony of the Debtor).)

- 6 -

that the Debtor has coming in comes from occasional contributions from his aged parents living in Florida (Transcript at 25, 30 (testimony of the Debtor)) and occasional loans from friends and the like. (Transcript at 55 (testimony of the Debtor).) As a result of the foregoing, as of the time of Trial the Debtor owed more money than he owed before the petition date. (Transcript at 26 (testimony of the Debtor).)

The Debtor was run over in two forklift accidents (one in August of 1999 and one on February 12, 2000). (Transcript at 14 (testimony of the Debtor).) He is prosecuting worker's compensation claims (the "W/C Claims") against his former employer. (Transcript at 14 (testimony of the Debtor).) That claim is "in limbo" now because "we're still waiting for the approval for the MRI for the insurance company." (Transcript at 14:10-13 (testimony of the Debtor).) The Debtor turned down a $70,000.00 settlement offer in respect of the W/C Claims. (Transcript at 14-15 (testimony of the Debtor).) He did that because he wanted "to get fixed. I need surgeries," (Transcript at 15:10 (testimony of the Debtor)). He currently is not receiving any worker's compensation benefits. (*See* Transcript at 14 (testimony of the Debtor).)[13]

The Debtor also had a gun blow up in his hand which left him with a "5 percent [hearing] loss in my left ear . . . ," (Transcript at 18:9 (testimony of the Debtor)). He has a lawyer representing him with respect to that claim (the "PI Claim"). (*Id.*) No settlement offers have been made with respect to the PI Claim and "the next time we should hear anything of any adversary proceeding [sic] will be . . . April of 2007," (*id.* at 18:16-17 (testimony of the Debtor)).

---

[13]  It appears that prior to March of 2003 the Debtor was collecting periodic payments with respect to the W/C Claims but (for reasons that are not entirely clear) those payments were terminated. (*See* Transcript at 60-62 (testimony of the Debtor).) The Debtor is attempting to have those payments reinstated. (Transcript at 62 (testimony of the Debtor).)

The Debtor made a claim for Social Security disability benefits on two occasions. (Transcript at 16-17 (testimony of the Debtor).) However, he doesn't "want Social Security disability . . . [b]ecause I want them to fix my body so at least I can try to go back to work and be a whole man," (*id.* at 17:1-5 (testimony of the Debtor)). The Debtor has not otherwise sought public assistance. (*See* Transcript at 62 (testimony of the Debtor).)

### 2. **The Plaintiff**

The Plaintiff is forty-one years old. (*See* Plaintiff's Exh. 2 at 2.) She remarried on October 14, 2006. (*See* Debtor's Exh. A). She is a high school graduate. (*See* Plaintiff's Exh. 2 at 2.) She has worked about eleven years for the same employer (Transcript at 6 (testimony of the Plaintiff)) as a "supervisor in the medical field," (Plaintiff's Exh. 2 at 2). She made $854.00 per week (gross) as of January, 2005. (*Id.*) The Plaintiff has medical insurance (Transcript at 56 (testimony of the Debtor)), a retirement plan and a 401(k) plan (Plaintiff's Exh. 2 at 6). The Plaintiff appears to be in good health and does not claim to be otherwise. She is not homeless. As a result of the divorce and this adversary proceeding, the Plaintiff owes debts to attorneys in the approximate amount of $35,000.00. (Transcript at 65 (testimony of the Plaintiff).)

### III. **LEGAL STANDARDS**

#### A. **11 U.S.C. § 523(a)(2)(A) (the Fraud Count)**

Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt – for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C.A. § 523(a)(2) (West 2005). To establish nondischargeability under Bankruptcy Code § 523(a)(2)(A), the Plaintiff must prove the following: (1) the Debtor made representations; (2) knowing them to be false; (3) with the intent and

- 8 -

purpose of deceiving the Plaintiff; (4) upon which representations the Plaintiff actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by the Plaintiff. *See AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (*en banc*); *Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr. D. Conn. 1999) (Krechevsky, J.). The Plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the fresh start policy of bankruptcy. *Kron, supra* at 165. Furthermore, the "debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immortality) is insufficient." *Id.* at 165-66.

### B. 11 U.S.C. § 523(a)(15) (the First Count)

Section 523(a)(15) provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
> . . .
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce . . . or in connection with a . . . divorce decree . . . *unless* –
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . *or*
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a . . . former spouse . . . of the debtor . . . .

11 U.S.C.A. § 523(a)(15) (West 2005) (emphasis added) (subsections (A) and (B), collectively, the "Safe Harbors").

>   The *standard* of proof under Section 523(a)(15), as with other Section 523(a) dischargeability exceptions, is a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. at 291 . . . . However, the *allocation* of the *burden* of proof under Section 523(a)(15) is somewhat unique. A plaintiff/former spouse bears the initial burden of demonstrating (i) that there is a "debt" owed to her; (ii) that such debt was "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement [or] divorce decree"; and (iii) that such obligation is "not of the kind described in . . . [Code Section 523(a)](5)." [the "Plaintiff's Burden"] Upon a successful initial showing by the plaintiff, the burden then shifts to the debtor-defendant to prove either one of the dischargeability "safe harbors" provided by subparagraph (A) and (B) of Section 523(a)(15). *E.g., Matter of Crosswhite*, 148 F.3d 879 (7th Cir. 1998); *Simon v. Murrell (In re Murrell)*, 257 B.R. 386, 389 (Bankr. D. Conn. 2001). In this manner the ultimate burden of persuasion may lie with the debtor-defendant.
>
>                                    . . .
>
> "[A]bility to pay" under subsection (A) of Section 523(a)(15) is not a static concept, compelling its assessment at a fixed point in time such as the bankruptcy petition date, the time of the trial, etc. Rather, it is a fluid concept which permits the Court to consider a debtor's prior employment, future employment opportunities, health status, etc. to determine whether the future wealth and earning capacity of that debtor will be sufficient to allow for payment of the subject debt. *See, e.g., Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (6th Cir. BAP 1998). To borrow an analogy, unlike the "rear view mirror" analysis which may apply to contests under Section 523(a)(5), the Court is compelled by Section 523(a)(15) to look out all of the windows of its vehicle. *See In re Dressler*, 194 B.R. 290, 300 (Bankr. D.R.I. 1996).
>
>                                    . . .
>
>   In essence, Section 523(a)(15)(B) embodies a form of "balancing test" in which a debtor must prove by a preponderance of the evidence that the benefit to him of a discharge of the subject debt outweighs the resulting detriment that will be suffered by the former spouse if the indebtedness is deemed dischargeable. This equitable balancing test must be applied on a case-by-case basis and involves an examination of the *totality of the circumstances* involved in each case. There is no fixed laundry list of factors to be considered, and no fixed weight to be accorded to particular facts. And as with Subsection (A), the balance must be assessed by the court with an eye out all "windows", *i.e.* with an awareness of the parties' past, present and future economic attributes and prospects.

*Gemza v. Rogan (In re Rogan)*, 283 B.R. 643, 647-49 (Bankr. D. Conn. 2002) (Dabrowski, J.)

(emphasis in original; first alteration added).

## IV. ANALYSIS

### A. The Fraud Count

The Plaintiff failed to address the Fraud Count at the Trial. Moreover, the Plaintiff failed to produce at the Trial any persuasive evidence in support of the Fraud Count. Accordingly, the Plaintiff has not carried her burden of proof on the Fraud Count.

### B. The First Count

It is uncontested that the Plaintiff has successfully carried the Plaintiff's Burden with respect to the Debtor's obligations under the Judgment (including the 45/55 Allocation, collectively, the "Judgment Obligations"). Accordingly, the burden is on the Debtor to establish one or the other of the Safe Harbors.

The court finds and/or concludes that the Debtor has proved the Section 523(a)(15)(B) Safe Harbor by a preponderance of the evidence. The situation and prospects of the Debtor are awful. The contrast with the Plaintiff's situation and prospects is stark. Perhaps the Debtor might alleviate his condition somewhat by seeking public assistance. However, his situation still would be far inferior to the Plaintiff's. The PI Claim relates only to a five percent hearing loss and is not likely to be of substantial value. The W/C Claims had a settlement value of $70,000.00 but could have a trial value of either more or less. However, their value must be proportional to the extent of the Debtor's disabilities. Given that the Debtor has no medical insurance, it is likely that any payment received by the Debtor on them will be consumed by the costs of his medical treatment to a material degree. Given all of the foregoing, the court concludes that the potential value of the PI Claim and the W/C Claim does not materially disturb the balance between the respective situations of the Debtor and the Plaintiff.

**V.     CONCLUSION**

For the reasons set forth above, the court concludes that the Judgment Obligations were discharged in this chapter 7 case pursuant to Bankruptcy Code§ 523(a)(15)(B). The court hastens to add that the foregoing conclusion does not disturb the Plaintiff's right to the fifty percent interest in the Property which she had prior to the Judgment. If the Plaintiff's interest is to be readjusted below fifty percent, that is for the state court. At the Trial, the parties were unclear (as is the court at this time) what effect a judgment for the Debtor here will have on the pendency of the Appeal. Accordingly, prior to issuance of such a judgment, the court here schedules a continued non-evidentiary hearing to assess the parties' positions (and intentions) with respect to that issue for June 27, 2007 at 10:00 a.m. The Trustee is requested to participate at that continued hearing.[14]

It is **SO ORDERED.**

Dated: June 7, 2007                                BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge

---

[14]     The Clerk's Office is directed to serve a copy of this opinion on the Trustee.

- 12 -